Draper Appeal.

Argued March 21, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Robert L. Ceisler,* for appellant.

*Sanford S. Finder,* for appellee.

OPINION BY MR. JUSTICE COHEN, July 15, 1963:

In accordance with the audit provisions of The Second Class Township Code,[1] on February 23, 1962 the auditors of Canton Township, Washington County, filed their report and settlement in the court of quarter sessions. From that report Vlasta Draper, appellant-taxpayer, filed an appeal in the court below on March 30, 1962, alleging, inter alia, that the township supervisors had made various improper expenditures; that the auditors were informed of these improprieties but failed to surcharge the supervisors as required by law; and that the court should grant a rule to show cause why the auditors should not be surcharged. The auditors filed a demurrer which was sustained by the court below on the ground that the auditors were not subject to surcharge. Appellant then sought to amend her pleadings by filing a rule to show cause why the supervisors should not be surcharged. The lower court refused the rule on the ground that the period of limitations had run. An appeal to this Court followed.

---

[1] Act of May 1, 1933, P. L. 103, §547, as amended, 53 P.S. §65547.

The issues confronting us are: (1) whether the auditors may be surcharged for failure to surcharge the supervisors, and (2) whether the amendment bringing in the supervisors should have been granted.

As to the first question, we hold that the auditors are not subject to surcharge. Although The Second Class Township Code imposes a duty upon the auditors to surcharge township officers for losses caused by their misconduct,[2] it does not provide for the surcharge of auditors. Sanctions against auditors for neglect of duty are specifically prescribed by section 549 of the Code: "Any auditor neglecting or refusing to comply with the preceding provisions of this article shall upon conviction thereof in a summary proceeding, pay a fine of not more than one hundred dollars, and in default of the payment of such fine and costs, shall be sentenced to imprisonment of not more than ten days." Act of May 1, 1933, P. L. 103, §549; amended by Act of July 10, 1947, P. L. 1481, §7, 53 P.S. §65549.

Since the auditors are not entrusted with the handling or expenditure of funds—the typical activity for the imposition of surcharges—it was the legislative intendment that the threat of criminal sanctions was sufficient to deter auditors from neglecting their duty.

With respect to the second question, we hold that the court below should have granted the amendment. Under the Act of May 1, 1933, P. L. 103, §553, as amended, 53 P.S. §65553,[3] it is only necessary to file an appeal from the auditors' report in the court of quarter sessions. This section does not require that the appeal

---

[2] Act of May 1, 1933, P. L. 103, §545, as amended, 53 P.S. §65545.

[3] "The township, or any registered elector or taxpayer thereof on its behalf, or any officer whose account is settled or audited by the township auditors, may appeal from any settlement or audit of the township auditors to the court of common pleas within forty-five days after the settlement has been filed in the court of quarter sessions."

be taken against specific persons, nor does it require that exceptions or specifications of error be filed. See *Walker's Appeal,* 44 Pa. Superior Ct. 145 (1910); *Horning's Case,* 26 Pa. Superior Ct. 282 (1904). On appeal to the common pleas court, that court will review de novo the report of the auditors and will "consider all the accounts as if they had been presented to it in the first instance." *Scranton School District Audit (No. 2),* 354 Pa. 232, 234, 47 A. 2d 292, 293 (1946). Consequently, it was not necessary for appellant to move to amend since the alleged improprieties of the supervisors were already before the court by the appeal that had been taken. But since appellant did follow this unnecessary procedure, the court below should have granted the amendment.

In addition, assuming arguendo that an amendment were necessary, the lower court was mistaken in its belief that the 45-day appeal period contained in The Second Class Township Code had run with respect to claims for surcharge against the township supervisors. As we have stated above, the appeal need not be brought against specific persons. Furthermore, a reading of the Act discloses that it only requires that an "appeal" be taken "from any settlement or audit" within 45 days. An appeal having been originally filed within the statutory time period, it should be heard by the court below after notice of the proceedings is given to the township supervisors in accordance with our holding in *Dunmore Borough v. Dempsey,* 280 Pa. 190, 124 Atl. 347 (1924).

Order affirmed in part and reversed in part.

Mr. Chief Justice BELL concurs in the result.

---

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

I vigorously dissent from that portion of the Majority opinion which says: "It was not necessary for

appellant [Mrs. Draper, the taxpayer] to move to amend since the alleged improprieties of the supervisors were already before the court by the appeal that had been taken."

This is one of the most astounding propositions ever asserted by an appellate court. It permits castigatory legal proceedings against persons who have not been served, who have not been advised, and who have not been warned of penalties which may be imposed against them. It makes of the courthouse an institution of oppression and of ex parte condemnation. It denies the individuals involved due process of law.

To say that the supervisors were in court because of their alleged improprieties in an appeal of an action in which they were not parties is nothing short of preposterous. This is like saying that A is in court because in a contest between B and C, A is mentioned. To accept such reasoning is to accept ex parte despotism. That it should happen in a court would not make it any less despotic.

The Majority has not cited one precedent, one case, one suggestion of authority for its appalling declaration. The reason for such an omission is obvious: none exists.

The case of *Scranton School District Audit (No. 2)*, 354 Pa. 232, which the Majority refers to does not remotely cover the situation involved here. In that case the school directors had been surcharged by the auditor and they were the ones who appealed from the surcharge. The court sustained the surcharge and the directors petitioned for a rehearing when the entire matter was reconsidered. Thus it is clear that the directors themselves were the moving parties; they were the ones who placed themselves within the jurisdiction of the court by appealing the surcharge. No issue was raised in that case as to the procedure followed. Even so, the Court did not look with approval on the pro-

ceedings and said they were "scarcely to be commended as exemplary in form."

Nor can the cases of *Walker's Appeal*, 44 Pa. Superior Ct. 145 and *Horning's Case*, 26 Pa. Superior Ct. 282 support the Majority's position. Those cases merely stand for the proposition that an appeal from an auditors' report is an appeal from the report as a whole and does not require the filing of specific exceptions or specifications of error. This, by no stretch of interpretation, can mean that in the appeal all fundamental principles of due process are to be ignored and that an officer can be surcharged without having received notice or opportunity to appear and defend himself.

Nothing can be more rudimentary in the law than that in adversary proceedings the person to be charged with a penalty of any character whatsoever must be served with notice of the claim against him. Without personal service, no sentence or judgment is valid. In this realm of jurisprudence there is no room for surmise, assumption or conjecture. There *must* be proof of personal service.

The Majority would attempt to set at naught the bedrock fundamentals of forms and solemnities prescribed through the majesty of the law to protect the people from the tyranny of star chamber and one-sided condemnatory actions.

The Majority assumes that because the report of the auditors allegedly spoke of alleged improprieties of the supervisors, the supervisors were to know of this. How were they to know? They were given no notice, they were not brought into court. Were they to learn of what was taking place through the airy ramblings of court corridor gossip, neighborhood tittle-tattle, or osmosis? The only way one can conclude that the supervisors knew of the content of the taxpayer's appeal is through the exercise of imagination. Imagination has

32

no place in the judgment indices of the Prothonotary's dockets.

But even if the supervisors heard idle talk and vague whisperings of charges or even observed floating on the streams of community chatter the froth of innuendo and oblique accusation, did they have any duty to voluntarily submit themselves to judicial jurisdiction in an adversary proceeding? Has rumor risen to the dignity of process?

A township supervisor, or even the most inconsequential person, has the absolute right to be notified by the Court through court channels if he is expected to appear in court to answer charges of misconduct. This is so fundamental that it is extraordinary one must write at such length about it.

· The Majority Opinion almost casually refers to *Dunmore Borough v. Dempsey,* 280 Pa. 190. That case is deserving of the utmost study and reflection, and it certainly excludes the interpretation of the Majority that no amendment is necessary in situations like the one here involved. It also excludes other assumptions inherent in the Majority Opinion.